

# EXHIBIT J



January 15, 2026

*Sent via U.S. Mail and via email*

Jane Nelson
Texas Secretary of State
Elections Division
P.O. Box 12060
Austin, TX 78711-2060
elections@sos.texas.gov

Dear Secretary Nelson:

We write on behalf of the League of Latin American Citizens (LULAC), Texas LULAC, and LULAC Council 102, as well as their members, regarding violations of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501, *et seq.* This letter serves as written notice pursuant to 52 U.S.C. § 20510(b) that your Office's practice of relying on citizenship status results from the USCIS SAVE system (the "SAVE purge")—which your Office knows or has reason to know are unreliable and discriminate against naturalized citizens and other non-native born citizens—to initiate voter registration list maintenance activities violates Section 8 of the NVRA.

## I.    Background

On October 21, 2025, your office sent a mass email to voter registrars and elections administrators notifying them that your office had begun "sending voter records to counties as part of a continuing process for identifying and removing non-United States citizens from the State's voter rolls" and that the process was "being conducted in accordance with the Secretary of State's Memorandum of Understanding with United States Citizenship Services (USCIS) to compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records." *See* Attachment A. Your office further instructed officials to process these voter records using the same process described in Election Advisory NO. 2021-11 concerning list

maintenance activity involving potential non-United States citizens.[1] That advisory instructs that it is the Secretary's position that a voter's presence on the files sent from your office is "reason to believe that the voter is no longer eligible for registration if the county's independent investigation does not demonstrate that the individual is a U.S. citizen" and that, given that reason to believe, the registrar should send a notice of examination pursuant to Section 16.033(b) of the Election Code. Once that notice is sent, a registrar must cancel the voter's registration unless the voter responds by providing proof of citizenship.

Pursuant to your October 21, 2025 advisory and the accompanying voter records sent by your office, many counties in Texas sent voters across the state notices of examination and, subsequently, cancelled their registrations if they did not receive responses within 30 days. The results bear out that the SAVE purge is an error-prone and discriminatory program that violates the National Voter Registration Act. Early reporting has already confirmed the U.S. citizenship of many individuals across Texas caught in this dragnet.[2] In Denton County alone, at least fourteen individuals have already come forward and provided proof of their citizenship. That represents nearly 17% of the 84 Denton voters identified by your office as potential non-citizens and that error rate is surely far underinclusive because many voters will simply not respond to the notices. And the reporting similarly confirms that the victims of this faulty system are not random but instead are, in large part, naturalized U.S. citizens and other non-native born U.S. citizens.

This should come as no surprise. *First*, as you know, USCIS has dramatically overhauled its SAVE system in an attempt to cobble together data capable of verifying the citizenship of voter registrants. But, in doing so, USCIS has relied on data sources that are known to be stale, unreliable, and incomplete; rushed its creation without adequate testing; and provided no public information about its matching criteria, accuracy, or other safeguards in place to protect American voters' privacy and access to the franchise.[3] *Second*, Texas should be well aware that the use of stale citizenship data for voter registration list maintenance has the known consequence of targeting

---

[1] Notably, that election advisory concerns a process that strictly defines the matching criteria for identifying potential non-citizens and limits records to those where an individual presents proof of non-citizenship *after* the date of registration to avoid the improper targeting of naturalized citizens for scrutiny. There has been, to date, *no* transparency concerning the matching criteria used by USCIS SAVE and the evidence to date, as discussed further *infra*, demonstrates that its results are often stale and do target naturalized citizens.

[2] *See*, *e.g.*, Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/save-voting-data-us-citizens; Natalia Contreras, *Texas flagged some voters as 'potential noncitizens' but they had already provided proof of citizenship*, VoteBeat (Dec. 18, 2025), https://www.votebeat.org/texas/2025/12/18/texas-voter-roll-citizens-investigation-save-database-travis-county/; Natalia Contreras, *Hundreds of Texas voters flagged as potential noncitizens may have already proven their citizenship*, VoteBeat (Dec. 2, 2025), https://www.votebeat.org/texas/2025/12/02/travis-county-officials-investigate-potential-noncitizens-dps-save-proof-of-citizenship/.

[3] Campaign Legal Center Comment Opposing HS and USCIS' Notice of Modification of System of Records (Dec. 1, 2025), https://campaignlegal.org/sites/default/files/2025-12/CLC%20Comment%20on%20USCIS-2025-0337.pdf.

naturalized citizens. In 2019, Texas engaged in a similar project relying on stale Department of Public Safety data, leading to litigation, a court order pausing the process, and ultimately, the state's abandonment of that project in a settlement.[4] *Third*, it appears that your office did not take basic steps available to you to vet the list of potential non-citizens provided by USCIS SAVE's system before sending it on to the counties to start the removal process. For example, your office did not consult with the Department of Public Safety to determine if it had citizenship documentation for any of those voters. Already, it has been reported that DPS was able to confirm the citizenship of 11 individuals in Travis County that registered at DPS. Likewise, the reported results call into question whether your office has exhausted all additional verification procedures available with USCIS (and contemplated by your memorandum of agreement) before sending these voters' names to county officials for removal.

On December 23, 2025, the Office of the Texas Secretary of State agreed to provide Texas's full unredacted voter file to the Department of Justice pursuant to the terms of a Memorandum of Understanding (MOU). That MOU, if similar to the one sent by the Justice Department to other states, requires "that within forty-five (45) days of receiving that notice from the Justice Department of any issues, . . . your state will clean its VRL/Data by removing ineligible voters." *See* Attachment B. It appears that under the MOU, the State's voter list will be run against the SAVE database or another federal database. Further action against voters based on the Justice Department's use of the voter file could result in further violations of the NVRA.

## II.     Requirements and Violations of Section 8 of the NVRA

### A.  Section 8(b)

Section 8(b) of the NVRA, 52 U.S.C. § 20507(b), requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" "shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." This provision protects against list maintenance programs that discriminate against, among others, naturalized citizens, including through use of matching names against the SAVE database. *See, e.g.*, *Mi Familia Vota v. Fontes*, 129 F.4th 691, 714–15 (9th Cir. 2025).

Naturalized citizens—who were previously non-citizens but later gained voting rights <u>by virtue of becoming U.S. citizens</u>—face heightened risks of "having their valid voter registrations cancelled if the databases [such as SAVE] have not been kept up to date." *See id.* at 705. Thus, list maintenance programs that use databases with stale citizenship data like USCIS's overhauled SAVE system for citizenship checks violate Section 8(b) because such checks disproportionally and unfairly target and will "have a discriminatory impact on naturalized citizens." *Id.* at 715–16 (quotations omitted).  Here, your office's reliance on an unvetted federal data system that relies on data *known* to be stale, unreliable, and incomplete to identify voters for

---

[4] *See generally Texas LULAC v. Whitley*, Campaign Legal Center (updated Feb. 4, 2019), https://campaignlegal.org/cases-actions/texas-lulac-et-al-v-secretary-state-david-whitley.

removal unlawfully targets non-native born United States citizens and therefore violates Section 8(b) of the NVRA.

### B. Section 8(c)

Section 8(c) of the NVRA, 52 U.S.C. § 20507(c), establishes a temporary "quiet period" for voter list maintenance during the 90 days immediately preceding federal elections, "when the risk of dis[en]franchising eligible voters is the greatest." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). This period is critical because "[e]ligible voters removed days or weeks before Election Day will likely not be able to correct the State's errors in time to vote." *Id.* Accordingly, while voter list maintenance is generally allowed year-round, Section 8(c) pauses "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" during the 90 days before a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A). The statute provides only limited exceptions, only exceptions, including removals by the registrant or based on death, criminal conviction, mental incapacity, or correction of registration records. 52 U.S.C. § 20507(c)(2)(B).

Despite sending your email about this new process to election officials relatively close in time to the 90-day quiet period,[5] nothing in your email references the quiet period or instructs officials not to engage in this list maintenance during that period. Likewise, nothing in the referenced Election Advisory No. 2021-11 references the restrictions during the quiet period.

In analyzing Section 8(c) of the NVRA, courts have recognized that, while systematic list maintenance is prohibited during the quiet period, states may still remove registrants based on "individualized information." *Arcia*, 772 F.3d at 1348. "A non-systematic or 'individualized' removal program relies on 'individualized information or investigation' to determine" voter ineligibility. *Mi Familia Vota*, 129 F.4th at 716 (quoting *Arcia*, 772 F.3d at 1344). By contrast, a systematic removal program may involve "cancelling batches of registrations based on a set procedure such as 'us[ing] a mass computerized data-matching process to compare the voter rolls with other state and federal databases, followed by the mailing of notices.'" *Id.*

Here, your office's reliance on data matching between the Texas voter file and SAVE exhibits all the hallmarks of the "systematic" list maintenance barred under Section 8(c). Like the programs in *Arcia* and *Mi Familia Vota*, your office is using "'a mass computerized data-matching process to compare the voter rolls with other state and federal databases'"—specifically, the federal SAVE system—"'followed by the mailing of notices.'" *See Mi Familia Vota*, 129 F.4th at 716 (quoting *Arcia*, 772 F.3d at 1344); *see also id.* at 717 (rejecting the argument that a providing "a person with mail notice and opportunity to respond" rendered a program individualized).

---

[5] Given the Texas primary date of March 3, 2026, the federal quiet period began on December 3, 2025.

Thus, any removals pursuant to this program occurring after December 3, 2026, for the upcoming March 3 primary elections or any other removals in the quiet periods for other upcoming federal elections would violate Section 8(c) of the NVRA.

### III.    Conclusion

As Secretary of State of Texas, you are the State's "chief election officer," Tex. Elec. Code § 31.001, and, as such, are responsible for ensuring Texas's compliance with the NVRA. *See* 52 U.S.C. § 20509. This letter constitutes notice pursuant to 52 U.S.C. § 20510(b) that the aforementioned SAVE purge program violates Section 8 of the NVRA.

As you know, the next election for federal offices will occur on March 3, 2026, which is less than 120 days away. If the violations identified above are not corrected within 20 days, the undersigned may seek declaratory and injunctive relief to remedy these violations. *See* 52 U.S.C. § 20510(b) ("If the violation is not corrected . . . within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action . . . .").

Your decision to threaten the voter registrations of thousands of Texans on the mere say-so of a federal agency—without any further investigation or insight into the accuracy of the data provided—improperly outsources your responsibility under the NVRA and state law to ensure that any list maintenance programs are reliable, accurate, and nondiscriminatory. LULAC and LULAC North Texas Veterans Council 101A urge you to reverse course. Thank you for your attention to this matter.

Respectfully submitted,

s/ Danielle Lang

_____

Danielle Lang
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
dlang@campaignlegalcenter.org
202-856-7911

CC:

Joyce Hudman
Brazoria County Clerk
111 E. Locust, Ste 200
Angleton, TX 77515

Kaleb Breaux
Collin County Elections Administrator
2010 Redbud Blvd., Suite 102
McKinney, TX 75069

Paul Adams
Dallas County Elections Department
1520 Round Table Drive
Dallas, TX 75247
dallascountyvotes@dallascounty.org

Frank Phillips
Denton County Elections Administrator
P.O. Box 1720
Denton, TX 76202

Annette Ramirez
Harris County Tax Assessor-Collector & Voter Registrar
1001 Preston, 2nd Floor,
Houston, TX 77002
P.O. Box 3527
Houston, TX 77253-3527
voters@hctx.net

Roxzine Stinson
Lubbock County Elections Administrator
P.O.Box 10536
Lubbock, TX 79408