**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF UNITED LATIN AMERICAN CITIZENS COUNCIL 102, and COMMON CAUSE, <br><br> *Plaintiffs*, <br><br> v. <br><br> JANE NELSON, in her official capacity as the Texas Secretary of State; JOYCE HUDMAN, in her official capacity as Brazoria County Clerk; PAUL ADAMS, in his official capacity as Dallas County Elections Department; FRANK PHILLIPS, in his official capacity as Denton County Elections Administrator; and KALEB BREAUX, in his official capacity as Collin County Elections Administrator, <br><br> *Defendants*. | CASE NO. 1:26-cv-00729-ADA-SH |

---

**DEFENDANT JANE NELSON'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Defendant Jane Nelson, in her official capacity as Texas Secretary of State ("Secretary Nelson"), files her motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Court should dismiss the Complaint in this case because Plaintiffs lack standing to sue and Secretary Nelson maintains sovereign immunity from suit.

**BACKGROUND**

Congress enacted the National Voter Registration Act (NVRA), 52 U.S.C. §§ 20501 *et seq.*, in 1993, to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," empower state governments to implement the NVRA "in a manner that enhances the participation of eligible citizens as voters in elections for Federal office,"

"protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

To further those ends, the NVRA requires states to establish certain procedures to facilitate voter registration for eligible citizens, including by increasing the number of locations where eligible citizens may register to vote and requiring driver's license applications to simultaneously serve as voter registration applications. 52 U.S.C. §§ 20504-20506. It also "sets forth requirements with respect to the states' administration of the voter registration process," by establishing certain restrictions on states' removal of names from their voter registration lists (for example, prohibiting states from removing voters from the voter registration rolls for failing to vote in a recent election). *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 354 (5th Cir. 1999); 52 U.S.C. § 20507. The NVRA also requires states to conduct programs to ensure accurate voter registration rolls in a uniform, nondiscriminatory manner in accordance with the Voting Rights Act. 52 U.S.C. § 20507.

Congress likewise enacted the NVRA's public disclosure provision consistent with its goal of maintaining the integrity of the electoral process. 52 U.S.C. § 20507(i). It states:

> (1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.
> (2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

52 U.S.C. § 20507(i). The NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this

chapter." 52 U.S.C. § 20509. The Secretary of State is the chief state election official responsible for the coordination of Texas' responsibilities under the NVRA. *See* TEX. ELEC. CODE § 31.001(a).

Texas has designated the county tax assessor-collector as the voter registrar for each county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar. TEX. ELEC. CODE § 12.001. The voter registrar of each county is responsible for maintaining the voter registration list for the county, is required to maintain a suspense list of voters, and must update the county voter registration records as necessary by making appropriate corrections to ensure their accuracy. *See* TEX. ELEC. CODE §§ 15.022, 15.081.

Consistent with its obligations under the NVRA to maintain accurate and current voter registration rolls, Texas regularly receives and investigates information from numerous sources to determine whether potential noncitizens are registered to vote in the state. 52 U.S.C. §§ 20501(b), 20507. As part of that ongoing process, Secretary Nelson provided information about potential noncitizens to the voter registrars of certain Texas counties—based on data received from the federal government—to assist registrars in maintaining the accuracy and currency of the voter rolls. Secretary Nelson sent that information to the counties in a manner consistent with the NVRA and Texas law. The release of that information to the general public would interfere with Texas's ongoing investigation. *See* Tex. Gov't Code § 552.101; Ex. R to Compl., ECF No. 1-19; Ex. S to Compl., ECF No. 1-20.

### ARGUMENT

Plaintiffs have failed to meet their burden to show that they have standing to sue Secretary Nelson. Additionally, Secretary Nelson asserts sovereign immunity against all of Plaintiffs' claims in this suit. Their claims are barred by the Eleventh Amendment to the United States Constitution. Sovereign immunity and the absence of standing to sue directly implicate this Court's subject matter jurisdiction. *James v. Hegar*, 86 F.4th 1076, 1080 (5th Cir. 2023) ("Standing is a component of subject matter jurisdiction."); *National Press Photog. Ass'n v. McCraw*, 90 F.4th 770, 780 (5th Cir. 2024) (noting that standing and sovereign immunity are "jurisdictional issues").

### A. Plaintiffs Lack Constitutional Standing

Plaintiffs do not have standing to challenge Secretary Nelson's activities undertaken to investigate potential noncitizens on the voter rolls because they have not suffered a legally cognizable injury. U.S. CONST. ART. III. These investigatory activities are directed at individual voters, not at advocacy organizations like Plaintiffs. "Because Plaintiffs challenge an alleged 'unlawful regulation of someone else,' standing is 'substantially more difficult' to establish." *United States v. Texas*, 173 F.4th 659, 664 (5th Cir. 2026) (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992)). Here, Plaintiffs have failed to establish standing and the Court should dismiss their claims.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized, actual or imminent, not conjectural or hypothetical. *Id*. Second, there must be a causal connection between the injury and the conduct complained of; the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id*. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. at 561.

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. Here, the Court need only dwell on the first element of standing, because absent an injury in fact, "there is no case or controversy for the Court to resolve." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 935 (5th Cir. 2022) (citing *Casillas v. Madison Ave. Assocs. Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). At this stage of the litigation, a complaint must contain general factual allegations to indicate that standing is plausible. *Lujan*, 504 U.S. at 561.

According to the complaint, Plaintiffs and their members will suffer harm from Texas's investigation into potential noncitizens on the voter rolls because the investigation increases the risk that they will have to "divert resources to mitigate" the investigation's effects and to educate their constituents and members on how to respond to notices from county voter registrars about

their potential removal from the voter registration list and how to re-register to vote if they are canceled from the rolls. Compl., ECF No. 1 ¶¶ 30, 32, 35, 39, 46-48. Plaintiffs also assert they will suffer harm because they will choose to review and revise their informational materials to include information about the investigation, educate volunteers, and translate the revised information into other languages. Compl., ECF No. 1 ¶¶ 33, 49, 50. In addition, they allege entitlement to certain voter records pertinent to Texas's ongoing investigation into potential noncitizens on the voter rolls. Compl., ECF No. 1 ¶¶ 254-258.

Here, Plaintiffs seek to manufacture standing by voluntarily incurring costs to advocate for their constituents in accordance with their mission. *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 82 (2026). Plaintiffs' theories of standing are fatally flawed and this Court should dismiss their complaint.

### 1.     Organizational Standing

Plaintiffs do not have organizational standing. They are nonprofit organizations that provide voter registration and education services to their members and constituents. Plaintiffs claim that Texas's investigation into whether noncitizens (who are ineligible to vote under federal and state law) are registered to vote in Texas will frustrate their missions, require them to restructure their services, and cause them to divert resources away from those they currently serve. *United States v. Texas*, 173 F.4th 659, 665 (5th Cir. 2026). Their asserted diversion of resources is willingly incurred, and is insufficient to confer standing. *Id.*

"The [Supreme] Court repudiated such theories [of standing] in *Alliance*, rejecting the proposition that 'standing exists when an organization diverts its resources in response to a defendant's actions.'" *Id.* (citing *Alliance*, 602 U.S. at 394-95 and "noting that the argument that the government has "'impaired [organizations'] ability to provide services and achieve their organizational missions' … does not work to demonstrate standing"). Plaintiffs' claim that they will spend money countering the effects of Texas's investigation into noncitizens on the voter rolls consistent with their missions fares no better, "[b]ecause an organization cannot 'spend its way into standing' or 'manufacture its own standing.'" *Id.* (citing *Alliance*, 602 U.S. at 394-95). "[T]hat

theory would mean that all the organizations in America would have standing to challenge almost every [] policy that they dislike, provided they spend a single dollar opposing those policies." *Alliance*, 602 U.S. at 394-95.

Plaintiffs' ideological opposition to Texas's efforts to identify and remove noncitizens from the voter rolls does not establish standing either. *United States*, 173 F.4th at 665. Plaintiffs "may not establish standing simply based on the "intensity of [their] interest" or because of strong opposition to [Texas's] conduct." *Alliance*, 602 U.S. at 394 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982)). Nor is standing measured by the "fervor of [Plaintiffs'] advocacy." *United States*, 173 F.4th at 665 (citing *Valley Forge,* 454 U.S. 464, 486). "These Plaintiffs cannot escape the fundamental precept that where there is no injury, there is no standing." *United States*, 173 F.4th at 665. The Court should dismiss Plaintiffs' claims.

### a)      Informational Injury

The same is true for Plaintiffs' efforts to establish standing on their NVRA public disclosure claim through an informational injury in the face of binding precedent to the contrary.  Plaintiffs cannot establish an injury in fact by alleging an informational injury based on not receiving all of the records they sought. *Campaign Legal Ctr.*, 49 F.4th at 936; *see Spokeo v. Robins*, 578 U.S. 330, 339 (2016). Thus, the Court need not even reach the issue of whether Plaintiffs have a right to the records they seek.

The Supreme Court and Fifth Circuit have rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *Spokeo*, 578 U.S. at 341; *Campaign Legal Ctr.*, 49 F.4th at 936 (internal quotations omitted). "[R]egardless of whether a statutory right is procedural or substantive …'Article III standing requires a concrete injury *even in the context of a statutory violation.*'" *Campaign Legal Ctr.*, 49 F.4th at 936–37 (citing *Spokeo*, 578 U.S. at 341; *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022)) (emphasis in original).

Plaintiffs' initial claim of informational injury based on Secretary Nelson's alleged NVRA violation collapses in light of binding Supreme Court and Fifth Circuit precedent. *Campaign Legal Ctr.*, 49 F.4th at 937.

The plaintiffs in *Campaign Legal Center* sought certain voter registration records from the Texas Secretary of State under the NVRA; the Secretary provided some of the requested records and withheld others, including the same type of information Plaintiffs seek here. The *Campaign Legal Center* plaintiffs sued, asserting entitlement to the requested records under the NVRA. The Fifth Circuit rejected the argument that the plaintiffs had standing, finding no injury in fact. *Id.*

Plaintiffs here make the same claim of informational injury that the Fifth Circuit rejected in *Campaign Legal Center*. Just like the *Campaign Legal Center* plaintiffs, Plaintiffs here have proffered no allegations regarding any downstream consequences from an alleged injury in law under the NVRA. *Id.* "[A]bsent concrete and particularized harm to these Plaintiffs from not obtaining the requested personal voter information, they assert no cognizable injury in fact." *Id.* "The lack of concrete harm here is reinforced because not a single Plaintiff is a Texas voter, much less a voter wrongfully identified as ineligible, and the Plaintiffs have not claimed organizational standing on behalf of any Texas voter members." *Id.* "They cannot and do not 'claim standing on behalf of any voter whose data is likely to be [mishandled].'" *Id.* (citing *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 380 (D.C. Cir. 2017)).

Plaintiffs have failed to allege any concrete and particularized harm from Secretary Nelson's determination that some of the records they seek are excepted from public disclosure. For the foregoing reasons, Plaintiffs lack standing to sue under the NVRA and the Court should dismiss the complaint. *Id.* at 939.

### 2. Associational Standing

Plaintiffs also lack associational standing. An organization has associational standing to bring suit on behalf of its members when one or more of the organization's members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to

the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

Here, any injury to Plaintiffs' members is too speculative to confer standing. Plaintiffs speculate that their members may be affected by Texas's investigation into noncitizens on the voter rolls, but have failed to present a discrete factual context that caused a concrete injury. *See Daughtrey v. Carter*, 584 F.2d 1050, 1056 (D.C. Cir. 1978). Plaintiffs have not alleged that any of their members have been identified as potential noncitizens unlawfully registered to vote, removed from the voter registration list or prevented from voting in an election. *See* Compl., ECF No. 1. Plaintiffs simply complain of voter roll maintenance activities that they believe are unlawful. *See id*. Their allegations amount to a generalized grievance about government, because they do not like that Texas is investigating whether noncitizens are registered to vote.

 "[A] plaintiff claiming only a generally available grievance about government…seeking relief that no more directly and tangibly benefits him than it does the public at large[,] does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. The Court should dismiss the complaint.

### B. Plaintiffs Lack Statutory Standing to Assert a Public Disclosure Violation Because They Failed to Provide the Notice Required by the NVRA

Alternatively, Plaintiffs lack standing to bring suit under the NVRA's public disclosure provision because they failed to provide Secretary Nelson with notice of the alleged violation. Notice is a prerequisite to filing suit under the NVRA. 52 U.S.C. § 20510(b). A person aggrieved by an alleged violation of the NVRA "may provide written notice of the violation to the chief election official of the state involved." 52 U.S.C. § 20510(b)(1); *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014). "Although notice is framed here as permissive rather than mandatory, other NVRA provisions indicate that notice is mandatory." *Scott*, 771 F.3d at 835. For example, the NVRA provides that generally, "[i]f the violation is not corrected within 90 days after receipt of [the] notice ... the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation." *Id.*; 52 U.S.C. § 20510(b)(2). A party

must wait 20 days after providing notice if the alleged violation took place within 120 days before a federal election. 52 U.S.C. § 20510(b)(2). There is no requirement to provide notice if the alleged violation took place within 30 days of a federal election. 52 U.S.C. § 20510(b)(3). "No standing is therefore conferred if no proper notice is given, since the [applicable] period never runs." *Scott*, 771 F.3d at 835 (citing *Ga. State Conference of NAACP v. Kemp,* 841 F.Supp.2d 1320, 1335 (N.D. Ga.2012)).

The purpose of the notice requirement is to provide states with "an opportunity to attempt compliance before facing litigation." *Scott*, 771 F.3d at 836. Plaintiffs' claim for violation of the public disclosure provision of the NVRA should be dismissed because they failed to provide notice to Secretary Nelson of any alleged violation. The complaint lacks any allegations that Plaintiffs sent written notice of an alleged violation of the public disclosure provision to Secretary Nelson, or that she received any such notice. *See* Compl., ECF No. 1. The notices Plaintiffs sent to Secretary Nelson fail to mention any alleged violation of the public disclosure provision and only discuss their allegations regarding Texas's voter registration list maintenance activities involving potential noncitizens. *See* Ex. J to Compl., ECF No. 1-11; Ex. K to Compl., ECF No. 1-12. Consequently, Plaintiffs failed to comply with the NVRA's explicit command that a state's chief election official must receive notice of a violation before an aggrieved person may file suit. 52 U.S.C. § 20510(b).

Plaintiffs' failure to provide Secretary Nelson with notice of the alleged violation deprived her of an opportunity to remedy the purported violation. Plaintiffs have no standing to seek relief on their public disclosure claim because they did not provide notice. *Scott*, 771 F.3d at 835. Count Two of Plaintiffs' complaint should be dismissed for failure to provide proper notice as required by the NVRA.

### C.  Secretary Nelson Has Sovereign Immunity from this Suit

Plaintiffs sued Secretary Nelson in her official capacity. Sovereign immunity "extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself." *McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011); *see Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (citing *Texas Dem. Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020)).

9

Plaintiffs do not allege that Defendants have consented to suit in this case or waived sovereign immunity. To the contrary, Secretary Nelson asserts sovereign immunity from this suit and from any liability to Plaintiffs. This suit is barred by the Eleventh Amendment to the United States Constitution and state sovereign immunity.

Although the law recognizes a limited exception to state sovereign immunity, it is inapplicable here. The legal fiction of *Ex parte Young*, 209 U.S. 123, 155–56 (1908), permits federal courts to enjoin prospective unconstitutional conduct by "individuals who are officers of the state, are clothed with duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature." *See Mi Familia Vota*, 105 F.4th at 325.

"*Ex parte Young* allows suits for injunctive or declaratory relief against state officials [in their official capacities], provided they have sufficient 'connection' to enforcing" a state action that allegedly violates federal law. *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) (citations omitted), *cert. granted, judgment vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021). If there is no such connection to enforcement of the law against the plaintiffs, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.* (citations omitted).

Plaintiffs make no allegation or showing, as required by *Ex parte Young*, that Secretary Nelson has threatened or is "about to commence proceedings" to carry out the challenged voter list maintenance activities against Plaintiffs or their members. *Mi Familia Vota*, 105 F.4th at 325. Mere authority to undertake the challenged state action is insufficient. *Id.* at 326. The "state official must have taken some step to enforce" the challenged state action against Plaintiffs. *Id.* at 329. Plaintiffs failed to allege they are threatened with any enforcement action against them by the Secretary of State—nothing that would involve the potential "compulsion or constraint" necessary to fall with the *Ex parte Young* exception. *Texas All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022); *see also Whole Women's Health v. Jackson*, 142 S. Ct. 522, 532 (2021) (describing the doctrine as "a narrow exception . . . that allows certain private parties to seek judicial orders in

federal court preventing state executive officials from enforcing state laws" against them); *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326-327 (2015) (similar). Plaintiffs' allegations of harm do not involve such potential enforcement actions against them; instead, their allegations amount to nonjusticiable generalized grievances about the conduct of government.

Plaintiffs have made no showing that Secretary Nelson's investigation into voter eligibility is directed at them or their members. Because Plaintiffs failed to allege that Secretary Nelson has any connection to actual or potential enforcement actions against them, their claims do not fall within the *Ex parte Young* exception. The claims against her are therefore barred by sovereign immunity.

## CONCLUSION

For the foregoing reasons, Plaintiffs lack standing to sue and Secretary Nelson enjoys sovereign immunity from suit. This Court should therefore dismiss the complaint for lack of subject matter jurisdiction.

Dated: June 10, 2026

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

/s/ *Munera Al-Fuhaid*
**MUNERA AL-FUHAID**
Special Counsel
Texas State Bar No. 24094501
munera.al-fuhaid@oag.texas.gov

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

OFFICE OF THE
ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2100

**ROB FARQUHARSON**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

**COUNSEL FOR DEFENDANT JANE NELSON**

11

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on June 10, 2026, a true and correct copy of the above and foregoing document was filed and served electronically via CM/ECF.

*/s/ Munera Al-Fuhaid*
MUNERA AL-FUHAID