# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| LEAGUE OF LATIN AMERICAN CITIZENS, et al., | § § § | |
| Plaintiffs, | § | **CIVIL ACTION NO.** |
| | § | |
| v. | § | **1:26-CV-00729-ADA-SH** |
| | § | |
| JANE NELSON, in her official capacity as the Texas Secretary of State, et al., | § § § | |
| Defendants. | § | |

## DEFENDANT PAUL ADAMS'S RULE 12 MOTION TO DISMISS,

## AND BRIEF IN SUPPORT

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY

Barbara S. Nicholas
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Jason G. Schuette*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallas.county.org

Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone:     214.653.7358
Telecopier:     214.653.6149

ATTORNEYS FOR THE DEFENDANT
PAUL ADAMS, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY ELECTIONS DEPARTMENT

*Application for admission to be filed

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

I.    INTRODUCTION AND OVERVIEW ....................................................................... 1

II.   GROUNDS FOR RELIEF ........................................................................................ 4

III.  ARGUMENT AND AUTHORITIES ........................................................................ 5

      A.    The Court lacks subject-matter jurisdiction because Plaintiffs lack
            standing, as Plaintiffs have not suffered an actual injury-in-fact that is
            fairly traceable to the challenged actions of Administrator Adams, and
            Plaintiffs do not aver more than a generalized grievance concerning
            Administrator Adams. ...................................................................................5

            1.    Interaction between National Voter Registration Act and Texas
                  Election Code, and absence of illegal or improper conduct by
                  Administrator Adams. .................................................................... 5

      B.    Plaintiffs lack Article III standing. ...............................................................7

            1.    Plaintiffs fail to plead facts that establish organizational or
                  associational standing. .................................................................. 7

            2.    Plaintiffs raise merely a generalized grievance........................ 10

            3.    Plaintiffs' alleged future injuries are wholly speculative and are
                  easily remediated. ........................................................................11

      C.    Plaintiffs' claims present a nonjusticiable political question. ...............12

      D.    Plaintiffs' Complaint fails to state a claim for which relief can be
            granted under § 1983. ..................................................................................13

      E.    Plaintiffs present no plausible independent claim for declaratory
            judgment. .......................................................................................................16

IV.   PRAYER .................................................................................................................. 16

CERTIFICATE OF SERVICE ............................................................................................ 17

## TABLE OF AUTHORITIES

**Constitutional Provisions**

U.S. Const. art. I, § 4................................................................................................ 14

U.S. Const. art. III, § 2 .............................................................................................. 5

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 14

*Baker v. Carr*,
    369 U.S. 186 (1962)...................................................................................... 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 14

*Campaign Legal Ctr. v. Scott*,
    49 F.4th 931 (5th Cir. 2022)............................................................................. 6, 8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).............................................................................................. 8

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024).............................................................................................. 7

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)......................................................................................... 5, 7

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) ............................................................................. 14

*Groden v. City of Dallas*,
    826 F.3d 280 (5th Cir. 2016) ............................................................................. 15

*Harris Cnty., Tex. v. MERSCORP, Inc.*,
    791 F.3d 545 (5th Cir. 2015).............................................................................. 16

*Howery v. Allstate Ins. Co.*,
    243 F.3d 912 (5th Cir. 2001)................................................................................ 5

*In re FEMA Formaldehyde Prods. Liab. Litig.*,
    668 F.3d 281 (5th Cir. 2012) ............................................................................... 5

*In re Gee*,
    941 F.3d 153 (5th Cir. 2019)................................................................................ 7

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1991) ................................................................................................ 5

*Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*,
   853 F.3d 173 (5th Cir. 2017) ................................................................................ 12

*La Union Del Pueblo Entero v. Abbott*,
   151 F.4th 273 (5th Cir. 2025) ......................................................................... 7, 8, 9

*Lance v. Coffman*,
   549 U.S. 437 (2007) ......................................................................................... 10, 11

*OCA-Greater Houston v. Texas*,
   867 F.3d 604 (5th Cir. 2017) .................................................................................. 7

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) ................................................................................ 14

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ................................................................................ 14

*Shrimpers and Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*,
   968 F.3d 419 (5th Cir. 2020) ................................................................................ 11

*Spectrum Stores, Inc. v. Citgo Petroleum Corp.*,
   632 F.3d 938 (5th Cir. 2011) .......................................................................... 12, 13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ............................................................................................ 5, 7

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) ............................................................................. 8, 11

*Texas State LULAC v. Elfant*,
   52 F.4th 248 (5th Cir. 2022) ................................................................................... 7

*Williams v. Treen*,
   671 F.2d 892 (5th Cir. 1982) ................................................................................ 15

**Statutes**

42 U.S.C. § 1988 ...................................................................................................... 16

52 U.S.C. § 10310(e) ............................................................................................... 16

52 U.S.C. § 20501(b)(3) ............................................................................................ 5

52 U.S.C. § 20501(b)(4) ............................................................................................ 5

TEX. ELEC. CODE § 16.0332.................................................................................................. 6

TEX. ELEC. CODE § 16.0332(a-1) ........................................................................................ 6

TEX. ELEC. CODE § 16.037(a) ............................................................................................ 12

TEX. ELEC. CODE § 16.037(d) ............................................................................................ 12

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEAGUE OF LATIN AMERICAN CITIZENS, et al., | § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 1:26-CV-00729-ADA-SH |
| | § | |
| JANE NELSON, in her official capacity | § | |
| as the Texas Secretary of State, et al., | § | |
| Defendants. | § | |

**DEFENDANT PAUL ADAMS'S MOTION TO DISMISS, AND BRIEF**

Defendant Paul Adams, in his official capacity as Dallas County Elections Department[1] ("Administrator Adams"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, files his motion to dismiss Plaintiffs' claims alleged against him in Plaintiffs' original complaint (ECF No. 1) (the "Complaint").

## I.    INTRODUCTION AND OVERVIEW

As the Dallas County Elections Administrator, Defendant Paul Adams endeavors to ensure that all who are entitled to vote in Dallas County are afforded that opportunity. Administrator Adams, however, is not empowered or authorized to change Texas or federal law regarding voter verification processes or control the processes adopted by the Texas Secretary of State.

Plaintiffs brought suit against the Election Administrators from Dallas County (Paul Adams), Denton County (Frank Phillips), Brazoria County (Joyce Hudman),[2] and Collin County

---

[1] Administrator Adams is named in the Complaint as "Paul Adams, in his official capacity as Dallas County Elections Department." *See* ECF No. 1, at 1. Administrator Adams's title is Election Administrator, and he is the appointed head of the Dallas County Elections Department. He is described correctly in paragraph 60 of the Compliant.

[2] On 1 June 2026, Plaintiffs voluntarily dismissed Defendant Hudman, who was sued in her official capacity as Brazoria County Clerk. *See* ECF No. 22 (Amended Order).

Defendant Adams's Rule 12 Motion to Dismiss                                                    Page 1

(Kaleb Breaux), along with the Texas Secretary of State Jane Nelson,[3] challenging practices that allegedly violate Section 8 of the National Voter Registration Act. Specifically, Plaintiffs allege that the State of Texas has adopted a "troubling voter purge program that relies on unvetted, outdated citizenship data to remove voters from rolls in ways that are discriminatory and non-uniform across counties."[4] Plaintiffs further allege that they filed suit to "vindicate rights under the National Voter Registration Act ("NVRA")."[5] Plaintiffs also seek relief pursuant to 42 U.S.C. § 1983.[6]

In sum, Plaintiffs complain of the Texas Secretary of State's 21 October 2025 Directive to County Elections Administrators to investigate possible ineligible, *i.e.*, non-citizen voters inclusion on voter registration rolls,[7] and more specifically, the manner in which Secretary Nelson created the list of potential ineligible voters,[8] and the instructions given to County Election Administrators/ Registrars.[9] For example, Plaintiffs allege that Secretary Nelson did not "instruct county officials to consult citizenship data gathered by DPS before taking steps to purge voters flagged by the SAVE search,"[10] and that, "[u]nsure of how to respond to its sudden launch, counties have imple- mented the Purge Program in different, non-uniform ways throughout the state, with some counties taking no action in response to the Purge Lists; other sending notices to all those on the Purge Lists

---

[3] Secretary Nelson has announced her decision to resign her office effective 17 July 2026. *See* https://dallasexpress.com/state/texas-secretary-of-state-jane-nelson-to-resign-july-17/.

[4] Compl. 1 para. 1.

[5] Compl. 2 para. 3; Compl. 45-53 paras. 240-243 (52 U.S.C. § 20507(b)(1)); Compl. 47-48 paras. 254-258 (52 U.S.C. § 20507(i)).

[6] Compl. 6 para. 21.

[7] Compl. 18 para. 92.

[8] Compl. 2 para. 7; Compl. 4 paras. 10-12; Compl. 16 para. 78.

[9] Compl. 4 para. 12; Compl. 5 para. 15; Compl. 18 para. 93; Compl. 32 paras. 168 & 171.

[10] Compl. 4 para. 12.

with no investigation; and others undertaking investigations and purging voters."[11]  Plaintiffs plead that the Purge Program violates section 8(b) of the NVRA "because it is both non-uniform and discriminatory," and "therefore causes the State's list maintenance program to have predictably discriminatory results."[12]

Plaintiffs seek the following relief: (1) a declaration that "Texas's SAVE Voter Purge violates Section 8(b) of the NVRA;"[13] (2) request the Court to "enjoin Defendants Secretary of State and Defendant counties from continuing to instruct election administrators to use the challenged Purge Program;"[14] (3) orders for Defendants to "place back on the rolls any persons who were removed from the rolls as a result of implementation of the Purge List, until such time as it can be conclusively proved that such voters are not currently U.S. citizens;"[15] (4) an order that the Secretary of State "provide access to the public voter registration list;"[16] and (5) attorney's fees and costs.[17]

Plaintiffs bring suit against Administrator Adams because he is the Elections Administrator for the Dallas County Elections Department.[18]  Plaintiffs' Complaint presupposes that Adminis-

---

[11] Compl. 31 para. 164.

[12] Compl. 5 para. 19.

[13] Compl. 48 (Prayer for Relief) ¶ 1.

[14] Compl. p para. 20; *see also* Compl. 48 (Prayer for Relief) ¶ 2.

[15] Compl. 48 (Prayer for Relief) ¶ 4.

[16] Compl. 49 (Prayer for Relief) ¶ 5.

[17] Compl. 49 (Prayer for Relief) ¶ 6.

[18] Plaintiffs have targeted four (4) County-level defendants out of the two hundred and fifty four (254) Texas Counties.  If Plaintiffs' concern is indeed that "counties have implemented the Purge Program in different, non-uniform ways throughout the state, with some counties taking no action in response to the Purge Lists; others sending notices to all those on the Purge Lists with no investigation; and other undertaking investigations and purging voters" (*see* Compl. 4-5 para. 14), then it stands to reason that all 254 county-level election administrators should be defendants.

trator Adams is violating the rights of voters; however, Administrator Adams has not violated any federal or state law, and has complied with the procedures set out in Texas Election Code § 16.0332, "Cancellation Because of Citizenship Status".[19] Administrator Adams, like the other Texas Election Administrators, has no control over the state statutory scheme which governs their actions, the processes by which the Texas Secretary of State compiled her list of potential ineligible voters, and the instructions which Secretary Nelson gave to Counties in her 2025 directive. In the end, Plaintiffs cannot prevail against Administrator Adams for a variety of reasons, including lack of standing and lack of facially plausible claims. The Court should dismiss as to Administrator Adams for the reasons set forth below.

## II.   GROUNDS FOR RELIEF

Administrator Adams requests the Court to dismiss Plaintiffs' claims against him on the following grounds:

1.   Plaintiffs have failed to establish statutory or Article III standing and, therefore, the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

- Plaintiffs have failed to provide proper notice under the NVRA to Administrator Adams.

- Plaintiffs have not suffered an actual injury-in-fact that is fairly traceable to the challenged actions of Administrator Adams, but instead allege a generalized grievance related to actions by the State of Texas, by and through its Secretary of State.

2.   Plaintiffs' claims against Administrator Adams present a non-justiciable political question. Fed. R. Civ. P. 12(b)(6).

3.   Plaintiffs have failed to state a claim upon which relief can be granted.

- Plaintiffs' claims purportedly brought under the NVRA are both conclusory and speculative, and do not plausibly allege a viable claim for relief.

- Plaintiffs have failed to plausibly plead any claims under 42 U.S.C. § 1983.

---

[19] *See* Compl. paras. 175, 179, 200.

4.    Plaintiffs' claim for declaratory relief is foreclosed by the unavailability of an underlying justiciable right.  Therefore, Plaintiffs have failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### III.    ARGUMENT AND AUTHORITIES

**A.    The Court lacks subject-matter jurisdiction because Plaintiffs lack standing, as Plaintiffs have not suffered an actual injury-in-fact that is fairly traceable to the challenged actions of Administrator Adams, and Plaintiffs do not aver more than a generalized grievance concerning Administrator Adams.**

Federal courts are courts of limited jurisdiction and—absent jurisdiction conferred by statute or the United States Constitution—are without power to adjudicate claims.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1991).  A court must dismiss an action when it lacks subject-matter jurisdiction, and the plaintiff bears the burden of proof to survive a Rule 12(b)(1) motion.  *Id.*; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  A district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *In re FEMA Formaldehyde Products Liability Litigation*, 668 F.3d 281, 287 (5th Cir. 2012).  The most fundamental principle concerning the judicial branch's role in our government is the Constitution's limitation of federal-court jurisdiction to actual cases or controversies.  U.S. Const. art. III, § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  There is no case or controversy when the plaintiff lacks standing to sue.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

**1.    Interaction between National Voter Registration Act and Texas Election Code, and absence of illegal or improper conduct by Administrator Adams.**

The National Voter Registration Act ("NVRA") sets out voter registration processes and voter registration list maintenance.  52 U.S.C. § 20501(b)(3)-(4).  Texas likewise has an election code which, in pertinent part, sets out procedures for cancellation of voter registration because of

citizenship status.  TEX. ELEC. CODE § 16.0332.

In *Campaign Legal Center*, a case dealing with the NVRA, the Fifth Circuit reversed the district court's issuance of an injunction—with instructions to dismiss the case—and succinctly described the interaction of the NVRA and Texas Election Code:

> The NVRA also provides that resident citizens can register to vote in a state when they apply for or renew their driver's licenses. *See id*. § 20504.  The state must, however, cross-check registrations to ensure that only eligible voters remain on the rolls.  *See id*. § 20507.  To do so, the Texas Secretary of State ("the Secretary") periodically compares information in the existing statewide computerized voter registration list against citizenship information in the database of the Department of Public Safety ("DPS").  TEX. ELEC. CODE § 16.0332(a-1).  Next, the Secretary sends the names of any potentially ineligible voter to appropriate local registrars.  See *id*. §§ 16.033(a), .0332(a).  If registrars determine a voter may be ineligible, they send "a written notice requiring the voter to submit to the registrar proof of United States citizenship."  *Id*. § 16.0332(a).  Failure to provide such proof can lead to cancellation of voter registrations. *See id*. §§ 16.033, 16.0332(b).

*Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 933 (5th Cir. 2022).  Plaintiffs are certainly aware of this statutory procedure contained in the Texas Election Code, because Plaintiffs discuss that code throughout their Complaint.[20]  But, Administrator Adams did exactly what the law requires, and Plaintiffs do not plead otherwise.

What emerges from Plaintiffs' Complaint is really that their concern lies with the statutory scheme under which the County-level Defendants are authorized to act.  Administrator Adams, however, is not empowered or authorized to change Texas or federal law.  The resolution sought by Plaintiffs rests with the Congress or the Texas Legislature.

---

[20] *See*, *e.g.*, Compl. 29 para. 153 (discussing the specific requirements of Texas Election Code § 16.0332(a-1)).

**B.    Plaintiffs lack Article III standing.**

**1.    Plaintiffs fail to plead facts that establish organizational or associational standing.**

As noted above, there is no case or controversy when the plaintiff lacks standing to sue. *FW/PBS*, 493 U.S. at 231.  To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025), *petition for cert. filed*, No. 25-904, Feb. 2, 2026 (quoting *Spokeo*, 578 U.S. at 338).  Plaintiffs "must establish standing for each and every provision they challenge."  *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019).

All of the Plaintiffs in this case are organizations; there are no natural person plaintiffs.  *See* Compl.  An organization "may have standing either by showing it can sue on behalf of its members ('associational' standing) or sue in its own right ('organizational' standing)."  *Texas State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022).  Therefore, the Court must address associational and organizational standing.  "'Associational standing' is derivative of the standing of the association's members, requiring that [1] they have standing and [2] that the interests the association seeks to protect be germane to its purpose."  *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017).  Organizations suing on their own behalf "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393-94 (2024).

Here, Plaintiffs do not explicitly allege which flavor of standing they rely upon, but they allege that courts have found two of them, LULAC and LULAC Council 102, to have shown

Defendant Adams's Rule 12 Motion to Dismiss                                                    Page 7

organizational or associational Article III standing in other civil actions.[21]  Plaintiffs fail to identify any particular person wrongfully identified by the county-level defendants as ineligible voters who were wrongfully purged from voter lists due to their citizenship status.  The foci of Plaintiffs' Complaint is more about the Secretary of State's purported deficiencies in the method of the verification process rather than a concrete and particularized injury to a specific person.  That alone does not confer standing.  As the Fifth Circuit clearly explained in *Campaign Legal Center*, the doctrines of informational and organizational standing do not derogate from the elemental requirement that an alleged injury be concrete and particularized.[22]  *See Campaign Legal Ctr.*, 49 F.4th at 938.

Also, to support standing, a plaintiff's injury must be more than speculative and must be "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  That requirement applies in suits brought under the NVRA.  *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019) ("whether compliance with the NVRA would prevent future injury to others is irrelevant; plaintiffs seeking injunctive relief must show a continuing or threatened future injury to themselves").

In *Campaign Legal Center*, and more recently in *La Union*, the Fifth Circuit addressed standing of LULAC and similar organizations, and particularly, the element that a plaintiff must suffer "an injury in fact that is (a) concrete and particularized and (b) actual or imminent." *Campaign Legal Ctr.*, 49 F.4th at 935; *La Union*, 151 F.4th at 285-88.  Absent such injury there is not a case or controversy for the federal court to resolve.  The Fifth Circuit ultimately concluded that the plaintiffs in those cases lacked standing, in whole or in part.  *See Campaign Legal Ctr.*, 49

---

[21] *See* Compl. 6-11 paras. 26 (LULAC), 43 (LULAC Council 102).  Texas LULAC and Common Cause do not allege that they have been found to have organizational standing in other cases.

[22] Plaintiffs here appear to invoke organizational standing.  *See* Compl. 7 para. 30; Compl. 10 para. 43.

Defendant Adams's Rule 12 Motion to Dismiss                                                    Page 8

F.4th at 937-939; *La Union*, 151 F.4th at 285-88.

In *La Union*, the plaintiffs argued that organizational standing existed because, *inter alia*, the challenged statutes:

- made it harder to recruit members due to fear of prosecution;
- "chilled" their activities; and
- required them to "expend resources" to educate their members about the new laws.

*La Union*, 151 F.4th at 286-87.  The Fifth Circuit rejected those arguments.  *See id.*

The Fifth Circuit also rejected the plaintiffs' arguments that they had standing because their members' injury was the loss of voting rights, not fear of prosecution under the challenged statutes. *Id.* at 288.  Plaintiffs here make the same arguments.  They allege that their members "include" individuals who are "at risk" of being "erroneously removed from the voter rolls,"[23] that the Purge Program will "hamper" "core voter registration and engagement efforts,"[24] and strain financial and staff resources and force reallocations.[25]  However, as both *Campaign Legal Center* and *La Union* explain, those circumstances do not confer Article III organizational standing.

Furthermore, Plaintiffs' allegations fail to allege facts that permit an inference of a concrete pending injury-in-fact traceable to Dallas County.  Similar to Plaintiffs' allegations regarding Collin and Denton counties, with respect to Dallas County Elections Administrator Adams, Plaintiffs aver:

- *First,* some counties engaged in no investigation whatsoever and sent SAVE NonCitizenship Notices to all voters on the lists within days of Defendant Secretary of State's October 21, 2025 guidance email to counties without any effort to verify the SAVE results relayed on the Purge Lists. Among

---

[23] Compl. 7 para. 28 (LULAC); Compl. 8 para. 36 (Texas LULAC); Compl. 9 para. 40 (LULAC Council 102); Compl. 10 para. 44 (Common Cause).

[24] Compl. 7 para. 30 (LULAC); Compl. 9 para. 37 (Texas LULAC); Compl. 9 para. 41 (LULAC Council 102); Compl. 10 para. 46 (Common Cause).

[25] Compl. 7-8 paras. 31-33 (LULAC); Compl. 8 para. 36 (Texas LULAC); Compl. 9 para. 39 (LULAC Council 102); Compl. 11 paras. 47-50 (Common Cause).

Defendant Adams's Rule 12 Motion to Dismiss                                    Page 9

- those counties include Defendant counties Brazoria, Collin, **Dallas**, and Denton.[26]
- **Dallas County** sent its Notice letters to over 100 voters on October 23, 2025, without conducting any preliminary investigation of the citizenship status of flagged voters.[27]
- In Brazoria, Collin, **Dallas**, and Denton counties, election officials were aware that many of the flagged voters had registered to vote at DPS yet failed to take the investigative step of verifying with DPS whether those voters had provided proof of citizenship when they registered.[28]

Plaintiffs' contentions about Dallas County simply do not meet threshold plausibility requirements, and indisputably fail to demonstrate standing. There are wholly missing fundamental allegations of any concrete pending injury-in-fact traceable to Dallas County. At most, Plaintiffs' allegations confirm that Dallas County sent out notices, as required by Texas Election Code § 16.0332. Notably absent, however, is any allegation that there is a specific individual in Dallas County who is a legal resident and whose voter registration card is and/or was incorrectly cancelled due to citizenship status. There is no allegation that a specific Dallas County resident was removed improperly as a result of the Voter Purge. Sheer speculation and pure conjecture about alleged non-specific injuries to yet identified persons cannot support standing.

### 2. Plaintiffs raise merely a generalized grievance.

A plaintiff does not state an Article III case or controversy merely by raising a generalized grievance about government and seeking relief that benefits it no more than it benefits the general public. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). As the Supreme Court explained in *Lance*, where the "only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed," this "is precisely the kind of undifferentiated, generalized grievance about the

---

[26] Compl. 33 para. 175 (bold emphasis added).

[27] Compl. 34 para. 179 (bold emphasis added).

[28] Compl. 34 para. 181 (bold emphasis added).

conduct of government that we have refused to countenance in the past." *Id.* at 442. Simply put, allegations that the law has not been followed do not constitute an injury in fact. *Id*. Because Plaintiffs' claims that Administrator Adams somehow failed to follow the law are generalized grievances that affect Plaintiffs (or more precisely, affect Plaintiffs' constituent members) the same as any other citizen, Plaintiffs do not have standing. *Id.* at 442.

3.     **Plaintiffs' alleged future injuries are wholly speculative and are easily remediated.**

Next, Plaintiffs have no actual injury because their claimed harm has not occurred—and might never occur. A future injury confers standing only if it is imminent, and not speculative. *Stringer*, 942 F.3d at 720-21. For a future injury to be imminent, there must be a substantial risk that the injury will occur. *Id*. at 721. Administrator Adams is a diligent and conscientious election administrator who takes the suffrage of Dallas County voters with the outmost seriousness. If Plaintiffs are aware of any such injuries, it is a matter that Administrator Adams would like to know.

However, review of the allegations against Administrator Adams in Plaintiffs' Complaint, as discussed above, underscores that Plaintiffs' supposed injuries—at least those attributed to Administrator Adams—are highly speculative and wholly hypothetical. Essentially, Plaintiffs' Complaint speculates that the Defendants, in various ways, have increased the risk of purging valid voters in the future based on citizenship status. But the Fifth Circuit has rejected the concept of probabilistic standing "based on a non-particularized increased risk—that is, an increased risk that equally affects the general public." *Shrimpers and Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*, 968 F.3d 419, 424 (5th Cir. 2020). Because Plaintiffs have no imminent injury-in-fact, they lack standing. *Id*.

Equally problematic for Plaintiffs is that their perceived fear of improperly removing

legitimate voters from the voter lists may be remediated, and is expressly addressed by the Texas Election Code § 16.037, a provision notably omitted in Plaintiffs' Complaint.[29]  Specifically, Texas Election Code § 16.037(a) provides, in pertinent part, that: "[i]f the registrar determines after cancellation of a registration that the registration should not have been canceled, the registrar shall reinstate it."  A reinstatement of a registration takes effect immediately.  *See* TEX. ELEC. CODE § 16.037(d).  But, Plaintiffs do not even get to this point as they have yet to even allege that Dallas County has in fact incorrectly cancelled even a single voter because of citizenship status.

For all of these reasons, Plaintiffs fail to plead facts sufficient to confer Article III standing.

## C.    Plaintiffs' claims present a nonjusticiable political question.

Additionally, the Court lacks subject-matter jurisdiction over Plaintiffs' claims because the claims present nonjusticiable political questions. over which Administrator Adams has no control. Under the political question doctrine, a claim is nonjusticiable if it would improperly require a court to review decisions exclusively within the purview of the political branches of government. *Kuwait Pearls Catering Co., WLL v. Kellogg Brown & Root Servs., Inc.*, 853 F.3d 173, 178 (5th Cir. 2017).  The political question doctrine is primarily a question of separation of powers.  *Baker v. Carr*, 369 U.S. 186, 210 (1962).  "At its core, the political question doctrine 'excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 950 (5th Cir. 2011).  In *Baker*, the Supreme Court outlined six factors, any one of which is sufficient to indicate the presence of a nonjusticiable political question:

---

[29] While Plaintiffs discuss the cancellation process contained in Texas Election Code § 16.0332, *see*, *i.e.*, Compl. 15 para. 76, and Compl. 29 para. 153, Plaintiffs wholly omit the "Reinstatement of Registration" process set out in Texas Election Code § 16.037.

[1.] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2.] a lack of judicially discoverable and manageable standards for resolving it; or [3.] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4.] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5.] an unusual need for unquestioning adherence to a political decision already made; or [6.] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Spectrum Stores*, 632 F.3d at 949 (quoting *Baker*, 369 U.S. at 217). Of those factors, the "dominant consideration" is whether the Constitution's text demonstrably commits an issue to a coordinate political branch. *Id.* at 950. That factor is dispositive, as the Constitution explicitly commits the determination of the time, place, and manner of conducting elections to the States. U.S. Const. art. I, § 4.

Here, as discussed previously, the cusp of Plaintiffs' claims against Administrator Adams arise from the Texas Legislature's policy determination, through the actions of the State Secretary of State, about the conduct of local elections, the operation of voting sites, and the State's obligations under the NVRA. Because the United States Constitution explicitly commits to the States the authority to determine the time, place, and manner of elections, U.S. Const. art. I, § 4, this case presents a nonjusticiable political question, and the Court must dismiss it.[30] *Spectrum Stores*, 632 F.3d at 950.

**D.   Plaintiffs' Complaint fails to state a claim for which relief can be granted under § 1983.**

Aside from the above jurisdictional defects, the Plaintiffs' Complaint fails to state any cognizable claim for which relief can be granted against Administrator Adams under § 1983.

---

[30] Because this factor is sufficient to render the case nonjusticiable, *Spectrum Stores*, 632 F.3d at 149, the Court need not analyze the remaining factors. However, these other factors also render this case a nonjusticiable political question.

The applicable legal standard regarding dismissal under Rule 12(b)(b) are summarized as follows.  To avoid dismissal under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires allegations beyond "the-defendant-unlawfully-harmed-me."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Claims must include enough factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  While the Court must accept all well-pleaded factual allegations as true, the Court may not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a plausible claim to relief.  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Plaintiffs' Complaint avers that their action is brought under the NVRA "as well as 42 U.S.C § 1983"[31] but it never again mentions § 1983.

Long ago, in *Piotrowski v. City of Houston*, the Fifth Circuit set forth in detail the "three attribution principles of municipal liability:

> Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements:  a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. … The three attribution principles identified here—a policymaker, an official policy and the "moving force" of the policy—are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.  Mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law.

*Piotrowski*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiffs' Complaint falls woefully short as to each of the three attribution principles.

---

[31] Compl. 6 para. 21.

While Plaintiffs are not required to plead the specific identity of Dallas County's final policymaker pertinent to their § 1983 claims,[32] they are required to plead at least enough factual matter to permit a reasonable inference of involvement by the relevant Dallas County policymaker. The Complaint is silent on that score. With respect to the second attribution principle, the existence of a deficient official policy (*i.e.*, a custom so persistent and widespread that it has the force of official policy),[33] the Complaint is virtually silent. As best as can be surmised from the Complaint, the Dallas County Elections Department custom is to *follow Texas law* by following the procedures set out in Texas Election Code § 16.0332.[34] And next, with respect to the third attribution principle, a violation of constitutional rights whose "moving force" is the custom, Plaintiffs do not plausibly allege that the Election Department's custom of following state law violates anyone's rights. A failure to plead facts sufficient to plausibly allege any one of the three attribution principles is fatal to Plaintiffs' perfunctory § 1983 claims, but here Plaintiffs have failed as to all three. The Court should dismiss Plaintiffs' § 1983 claims with respect to Administrator Adams.

Finally, and although certainly not articulated by Plaintiffs, to the extent Plaintiffs attempt to sue Administrator Adams for purported violations of the Texas Election Code or any other state statute (which Administrator Adams vehemently denies), Plaintiffs cannot do so. The well-settled rule is that violations of state law are not actionable under § 1983. *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). Accordingly, Plaintiffs' singular invocation of § 1983 fails to state a

---

[32] *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016) (holding that a § 1983 plaintiff is not required to plead the identity of the final governmental policymaker).

[33] Official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *4 (N.D. Tex. Jan. 13, 2017) (Cummings, J.) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted)).

[34] *See* Compl. paras. 175, 179, 200.

Defendant Adams's Rule 12 Motion to Dismiss

claim for which relief can be granted.

**E.     Plaintiffs present no plausible independent claim for declaratory judgment.**

Finally, the Court should dismiss Plaintiffs' claims for declaratory relief. The Declaratory Judgment Act does not create a federal cause of action. *Harris Cnty., Tex. v. MERSCORP, Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Rather, that statute merely enlarges the remedies available in federal court, but a plaintiff must first have a valid, independent cause of action supporting federal jurisdiction. *Id*. As shown above, Plaintiffs here have no case or valid cause of action(s) against Administrator Adams. Thus, Plaintiffs are not entitled to declaratory relief. *Id*. at 552-53.

## IV.     PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Paul Adams, in his official capacity as Dallas County Elections Department, moves the Court to dismiss all claims against him from Plaintiffs' Complaint, that Administrator Adams be granted his reasonable and necessary attorney fees and costs as provided by 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988, and that the Court grant him all such other and further relief to which he is justly entitled.

Respectfully submitted,

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY

*/s/ Barbara S. Nicholas*
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Jason G. Schuette*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallas.county.org

Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone:     214.653.7358
Telecopier:    214.653.6149

ATTORNEYS FOR THE DEFENDANT
PAUL ADAMS, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY ELECTIONS DEPARTMENT

*Application for admission to be filed

## CERTIFICATE OF SERVICE

I hereby certify that on 12 June 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the undersigned and to all following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jason G. Schuette*
Assistant District Attorney