**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF LATIN AMERICAN CITIZENS, et al.,** | § § | |
| Plaintiffs, | § | **CIVIL ACTION NO.** |
| | § | |
| **v.** | § | **1:26-CV-00729-ADA-SH** |
| | § | |
| **JANE NELSON, in her official capacity as the Texas Secretary of State, et al.,** | § § | |
| Defendants. | § § | |

**DEFENDANT PAUL ADAMS'S REPLY IN SUPPORT OF HIS**

**RULE 12 MOTION TO DISMISS, AND BRIEF**

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY

Barbara S. Nicholas
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Jason G. Schuette*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallas.county.org

Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone:      214.653.7358
Telecopier:     214.653.6149

ATTORNEYS FOR THE DEFENDANT
PAUL ADAMS, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY ELECTIONS DEPARTMENT

*Application for admission to be filed

**TABLE OF CONTENTS**

I.      SUMMARY OF THE REPLY ................................................................................ 1

II.     ARGUMENTS AND AUTHORITIES IN REPLY ............................................. 1

        A.      Plaintiffs fail to show that their Complaint pleads nonconclusory facts
                that confer Article III standing. ...................................................................1

                1.      Adams does not contend that notice was insufficient under the
                        NVRA. ................................................................................................ 1

                2.      Plaintiffs fail to show that they sufficiently alleged
                        associational standing. ................................................................... 2

                3.      Plaintiffs fail to show that they sufficiently alleged
                        organizational standing. ................................................................. 4

                4.      Plaintiffs fail to show that they plead facts sufficient to infer
                        that their alleged injuries are traceable to Administrator
                        Adams's actions and are redressable by an injunction against
                        him. ................................................................................................ 6

        B.      Plaintiffs fail to show that their Complaint does not present a non-
                justiciable political question. .......................................................................7

        C.      A word about the SAVE database ................................................................8

        D.      The Plaintiffs' proposed relief would still not comply with the NVRA,
                as Plaintiffs envision the NVRA to operate. ...............................................9

        E.      Plaintiffs concede they are not bringing any Section 1983 claim.............9

        F.      Plaintiffs concede that they have no independent claim for Declaratory
                Judgment. ...................................................................................................10

III.    CONCLUSION................................................................................................. 10

IV.     PRAYER .......................................................................................................... 10

CERTIFICATE OF SERVICE ...................................................................................11

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **LEAGUE OF LATIN AMERICAN CITIZENS, et al.,** | § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO.** |
| **v.** | § § | **1:26-CV-00729-ADA-SH** |
| | § | |
| **JANE NELSON, in her official capacity as the Texas Secretary of State, et al.,** | § § § | |
| **Defendants.** | § | |

**DEFENDANT PAUL ADAMS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

Defendant Paul Adams, in his official capacity as Dallas County Elections Department

("Administrator Adams"), files his reply to *Plaintiffs' Response to Dallas, Denton, and Collin*

*County Defendants' Motions to Dismiss* (ECF No. 33) (the "Response").

## I.    SUMMARY OF THE REPLY

The Response fails to show that Plaintiffs have pleaded facts that establish organizational

or associational standing and that they raise more than a generalized grievance that is not easily

remedied.  Further, Plaintiffs fail to show that their complaint presents a justiciable, non-political

question.  Moreover, Plaintiffs have disavowed any claim arising under § 1983.  Finally, Plaintiffs

concede that they have no independent claim for declaratory or injunctive relief.  Therefore, the

Court should grant Administrator Adams's motion to dismiss.

## II.    ARGUMENTS AND AUTHORITIES IN REPLY

**A.    Plaintiffs fail to show that their Complaint pleads nonconclusory facts that confer Article III standing.**

**1.    Adams does not contend that notice was insufficient under the NVRA.**

Pages 6-9 of the Response explain that Plaintiffs satisfied the NVRA's pre-suit notice

requirements as to the "County Defendants," which the Response defines as Administrator Adams,

Administrator Phillips, and Administrator Breaux, as the Elections Administrators of Dallas, Denton, and Collin County, respectively. *See* Response at 1.  Administrator Adams did not argue that Plaintiffs failed to meet the NVRA's pre-suit notice requirements specified in 52 U.S.C. § 20510(b)(1).  *See* ECF No. 28 (Motion), at 5-16.

### 2.    Plaintiffs fail to show that they sufficiently alleged associational standing.

As Defendants Phillips and Breaux point out in their joint reply to the Response, Plaintiffs' Response largely recaps the allegations of their Complaint.  *See* ECF No. 33, at 9.  Summarizing the Complaint's allegations does not, however, demonstrate standing.  More specifically, Plaintiffs' Response fails to identify any specific person wrongfully identified by the County-Defendants as an ineligible voter who was wrongfully purged from a voter list on the basis of citizenship status, much less an individual who was wrongfully purged as a result of the use of SAVE data.

Plaintiffs contend that they are not required, at the pleading stage, to "set forth the name of particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing," *see* Response 11 (quoting *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198-99 (5th Cir. 2012)).  But *Hancock* requires more thorough reading than the snippet Plaintiffs proffer.  As the Fifth Circuit explained,

> Additionally, the NAACP branches were not merely alleging that some members *might* suffer a "one person, one vote" violation.  The NAACP branches were alleging that some members *were* suffering such a violation. By alleging that some of its members were voters from overpopulated and under-represented districts, the NAACP branches adequately alleged that some of its members were suffering a concrete, particularized injury.  We conclude that each NAACP branch adequately pleaded the elements of associational standing.

*Hancock*, 487 F. App'x at 198-99 (emphasis in original).

That is far from the situation here.  In this case, Plaintiffs do not suffer a particularized, concrete injury merely by virtue of being naturalized citizens.  This stands in sharp contrast to the

*Hancock* case, where merely residing in an overpopulated (and therefore underrepresented) district imposed the concrete, particularized constitutional harm.

Plaintiffs also cite *Lewis v. Hughs*, 475 F. Supp. 3d 597 (W.D. Tex. 2020)[1] for this point. But *Lewis* cites *Hancock*, and further, in *Lewis* the plaintiffs included individuals who, in addition to alleging that they personally suffered the particularized injuries alleged in the complaint, were members of the organizational plaintiffs. *See id.* at 612-13. That also distinguishes *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014), from the situation in this case, because in *Arcia*, as in *Lewis* and *Hancock*, there were individuals who stood in actual peril of suffering a concrete and particularized injury. *See Arcia*, 772 F.3d at 1342. The harm was not merely conjectural, as here.

As Defendants Phillips and Breaux urge in their joint reply brief, it is important to revisit precisely what Plaintiffs plead concerning Dallas County Administrator Adams's conduct. As did Defendants Breaux and Phillips, Administrator Adams directs the Court to the specific Complaint paragraphs that allege facts pertinent to that county's alleged conduct:

> 175. *First*, some counties engaged in no investigation whatsoever and sent SAVE Non-Citizenship Notices to all voters on the lists within day of Defendant Secretary of State's October 21, 2025 guidance to counties without any effort to verify the SAVE results relayed on the Purge Lists. Among those counties include Defendant counties Brazoria, Collin, **Dallas**, and Denton.

> 179. **Dallas County** sent its Notice letter to over 100 voters on October 23, 2026, without conducting any preliminary investigation of the citizenship status of flagged voters.

> 182. In Brazoria, Collin, **Dallas**, and Denton counties, election officials were aware that many of the flagged voters had registered to vote at DPS

---

[1] *Lewis v. Hughs*, 475 F. Supp. 3d 597, 611 (W.D. Tex. 2020), *aff'd and remanded*, No. 20-50654, 2020 WL 5511881 (5th Cir. Sept. 4, 2020), *order withdrawn*, No. 20-50654, 2020 WL 6066178 (5th Cir. Oct. 2, 2020) *and rev'd and remanded sub nom. Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022).

yet failed to take the investigative step of verifying with DPS whether those voters had provided proof of citizenship when they registered.

200.  In other counties, including **Dallas** and Bell County, voters responded to Notices within the narrow 30-day window to provide documentary proof of citizenship and stop the county from purging their registration.  Counties purged those who failed to respond in time.

Compl. paras. 175, 179, 182, 200 (bold emphasis added).

Complaint paragraph 200 is notable in that Plaintiffs affirmatively allege that individuals in Dallas County who responded to Administrator Adams's Non-Citizenship Notice letters were not purged from Dallas County's voter roll.  Therefore, contrary to the arguments Plaintiffs proffer in the Response, the sum of Plaintiffs' allegations show:

- Administrator Adams sent out Non-Citizenship Notices in the manner provided by the Texas Election Code § 16.033;

- Administrator Adams utilized the Texas Secretary of State's prescribed form 21-50; and

- Citizens who received and responded to Non-Citizenship Notice letters were not purged.

More importantly, there is no allegation that a person otherwise eligible to vote in Dallas County was purged from the voter roll due to placement on the SAVE database in issue.  Put differently, Plaintiffs fail to plead any nonconclusory, non-speculative factual allegation that a Dallas County resident was erroneously purged on the basis of citizenship status.  Such allegations fail to confer upon Plaintiffs associational standing.

### 3.     Plaintiffs fail to show that they sufficiently alleged organizational standing.

Plaintiffs assert that they "have also established injury in fact under an organizational standing theory by demonstrating that they have 'diverted significant resources to counteract the defendant's conduct' where that conduct 'significantly' and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's

Defendant Adams's Rule 12 Motion to Dismiss – Reply                                    Page 4

resources….'"  *See* Compl. at 12 (quoting *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) (quoting in turn *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)).[2]

Those cases substantially predate the Fifth Circuit's recent decision in *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273 (5th Cir. 2025), in which the court rejected the plaintiffs' argument that they had standing because they had to "expend resources" to educate their members about the provisions of recent legislative enactments related to voting and registration.  "[Plaintiffs] are again mistaken," the court wrote, explaining that "divert[ing] ... resources in response to a defendants' actions" does not establish standing.  *La Union*, 151 F.4th at 287 (citing *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 395 (2024)).  Plaintiffs here do not attempt to square *Alliance* with *La Union*.  *See* Response at 12-15.

Plaintiffs nonetheless urge that the County Defendants' use of the SAVE database to send Non-Citizenship Notice Letters somehow "impairs" Plaintiffs' core activities of "registering and assisting voters," and thus Plaintiffs' claims of organizational standing fall within the scope of *Havens*.  *See* Response 13.  What Plaintiffs don't satisfactorily explain is *how.*  True, the Response avers to Complaint allegations asserting that the County Defendants' use of the SAVE program data to try to ferret out ineligible voters interferes with Plaintiffs' registration efforts.  *See* Compl. at 14-15.  But there is a patent disconnect between alleged impediments to voter outreach and registration of new voters on the one hand, and assisting voters who allegedly were mistakenly purged from the rolls as the result of erroneous SAVE data.  Perhaps that explains the conspicuous absence of any allegation of even a single instance wherein a citizen, who was wrongly removed from the voter rolls, approached any of the Plaintiff organizations for assistance in correcting a

---

[2] Administrator Adams points out that Plaintiffs haven't established or demonstrated anything of the sort at this stage of the litigation.  At present, all that exists are allegations, not evidence, much less evidence of a diversion of "significant resources."

mistaken removal from a voter roll as a result of usage of the SAVE data in any of the Defendant County jurisdictions. *See* Complaint.

Finally, as Defendants Breaux and Phillips point out in their reply brief, Plaintiffs mention *Campaign Legal Center v. Scott*, 49 F.4th 931 (5th Cir. 2022), barely in passing, and then only so far as to state their legal conclusion that they have alleged a concrete and particularized injury sufficient to confer organizational standing. *See* Response at 15. Plaintiffs do not explain why *Campaign Legal Center* does not apply here, or why the Fifth Circuit should not have reversed the district court's issuance of an injunction and given instructions to dismiss the case. What remains is that Plaintiffs' concern lies with the statutory scheme under which the County-level Defendants are authorized to act, and that Administrator Adams is not empowered or authorized to change Texas or federal law. For these reasons, Plaintiffs fail to show that they enjoy either associational or organizational standing.

> **4.  Plaintiffs fail to show that they plead facts sufficient to infer that their alleged injuries are traceable to Administrator Adams's actions and are redressable by an injunction against him.**

Plaintiffs urge that their alleged injuries are traceable to the conduct of the County-level Defendants and redressable by issuance of an injunction against them. Response at 15. Plaintiffs' position isn't consistent with their pleaded allegations. Indeed, it cannot be reconciled.

*First*, Plaintiffs complain that the so-called Purge Program violates the NVRA because among other things, it is not uniform, in that it is applied differently in Texas's 254 counties. *See* Compl. paras. 240-244. Yet Plaintiffs would remedy that purported defect by requiring Collin, Dallas, and Denton counties to operate under a different set of rules and standards than the rest. Indeed, Plaintiffs implicitly acknowledge this by stating that "the injunctive relief sought in the Complaint … would substantially lessen the alleged harm by eliminating those harms *in those Counties*." Response at 15 (emphasis added).

Defendant Adams's Rule 12 Motion to Dismiss – Reply                                    Page 6

*Second*, Plaintiffs seek an injunction "prohibiting Defendants from removing individuals from the voter registration list solely because they have been flagged as noncitizens by the SAVE system." Compl. 48 ("Prayer for Relief") para. 2(2). But Plaintiffs do not allege that Administrator Adams has caused *any* registered voter to be removed from Dallas County's voter roll solely for appearing on a SAVE list received from the Secretary of State. As Plaintiffs' plead, such voters were sent Non-Citizenship Notice letters in the manner provided by the Texas Election Code § 16.033 and as prescribed by the Texas Secretary of State's form 21-50—and there is no allegation that Administrator Adams did not comply with that statute, much less that any citizenship-eligible voters were improperly removed in Dallas County.

For these several reasons, Plaintiffs fail to show Article III standing, and the Court should dismiss the Complaint as to Administrator Adams.

**B.      Plaintiffs fail to show that their Complaint does not present a non-justiciable political question.**

Plaintiffs assert that the County Defendants "fundamentally misunderstand the political question doctrine," and that the "Constitution's Elections Clause commits to Congress the right to preempt any state laws with respect to the time, place, and manner of federal elections." Response at 18. Administrator Adams does not dispute Congress's power under article I, § 4, clause 1 of the Constitution. Indeed, Administrator Adams is committed to taking all lawful steps to comply with both the Constitution and the NVRA.

That said, the Texas Secretary of State has implemented measures regarding who may vote in Texas elections (including federal elections administered in Texas), and has issued guidance to local election officials for lawful use of SAVE data. Likewise, the Texas legislature has enacted Texas Election Code § 16.033, which contains procedures to protect against arbitrary removals of eligible voters from the rolls. Plaintiffs' actual complaint appears to be with the provisions of the

Defendant Adams's Rule 12 Motion to Dismiss – Reply                                      Page 7

Election Code and the policy choices for complying with the Constitution and the NVRA made by elected officials. That presents a non-justiciable political question, which this Court should not entertain.

## C.   A word about the SAVE database

In footnote 1 in the Response, Plaintiffs reference a decision by the District Court of the District of Columbia, which found that deployment of the SAVE database for verification of voter eligibility violated the Privacy Act, the Social Security Act, and the Administrative Procedure Act. *See League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25cv3501 (SLS), 2026 WL 1784297, at *1 (D.D.C. June 22, 2026), *appeal docketed*, No. 26-5243 (D.C. Cir. June 29, 2026). However, in *Florida v. U.S. Dep't of Homeland Security*, the District Court for the Northern District of Florida determined that the District of Columbia court's legal findings regarding the legality of the SAVE database's deployment as a voter eligibility tool were erroneous:

> This Court is not bound by [United States District Court] Judge Sooknanan's order, and with all due respect, the Court disagrees with the conclusions in that order. For example, with respect to the Social Security Act, even though 42 U.S.C. § 405(c)(2)(C)(viii)(I) seemingly precludes the Social Security Administration (SSA) from disclosing SSNs to anyone, that statute does not preclude SSA from doing so in the immigration context because SSNs can provide information about citizenship and U.S.C. § 1373(a) expressly provides that "[n]otwithstanding any other provision of Federal ... law, a Federal ... entity or official may not ... in any way restrict[ ] any government entity or official from sending to ... [Defendants] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." (emphasis added). Moreover, with respect to the Privacy Act, the modifications to the SAVE system plainly fall within the Act's "routine use" exception in 5 U.S.C. § 552a(a)(7), (b)(3), because using SSNs to verify the identity of potential non-citizens is not incompatible with the purpose of SSNs (e.g., "to establish the age, citizenship, or alien status and true identity" of individuals, *see* 42 U.S.C. § 405(c)(2)(B)(ii)), and it is undisputed that Defendants published notice of the use of SSNs as part of the modified SAVE system in advance of the order approving the settlement agreement requiring integration of the SSN-search feature.

*State v. United States Dep't of Homeland Sec.*, No. 3:24-CV-509-TKW-HTC, 2026 WL 1968339,

at *3 (N.D. Fla. July 7, 2026) (underline emphasis original) (footnotes omitted).

While the issues in the district court litigation in the District of Columbia and in Florida as to the legality of the deployment of the SAVE database as a voter eligibility verification tool do not precisely align with Plaintiffs' allegations here that the SAVE database is inherently unreliable and should not be used for citizenship verification purposes, this Court should not be left with the impression that the District of Columbia district court's order, referenced in footnote 1 of Plaintiffs' Response, is unchallenged.

**D.      The Plaintiffs' proposed relief would still not comply with the NVRA, as Plaintiffs envision the NVRA to operate.**

Plaintiffs assert that they have pleaded a viable claim under Section 8(b)(1) of the NVRA, in that the "Purge Program" is not "uniform." As Plaintiffs frame it, "[t]he term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction," and "the County Defendants have applied the Program in a disjointed, non-uniform way." *See* Response at 18. However, as pointed out above, Plaintiffs seek a remedy that will result in non-uniform, disjointed application. The relief Plaintiffs seek will not apply to all 254 Texas counties. Further, Plaintiffs apparently have entered into a settlement agreement with former Defendant Joyce Hudman, in her official capacity as the Brazoria County Clerk. Will NVRA Section 8(b)(1)'s "uniformity" requirement now require Collin, Dallas, and Denton Counties to administer their operations in the same manner as agreed to by Brazoria County? Again, Plaintiffs cannot square their allegations with their requested relief. In any event, Plaintiffs lack Article III standing, so the NVRA claims cannot proceed.

**E.      Plaintiffs concede they are not bringing any Section 1983 claim.**

Although the Complaint alludes to 42 U.S.C. § 1983, *see* Compl. para. 21, Plaintiffs state that "Plaintiffs bring their claims under the NVRA's private right of action, not 42 U.S.C. § 1983."

Response at 18 n.6.  Therefore, the Court should dismiss any claims alleged under § 1983.

**F.    Plaintiffs concede that they have no independent claim for Declaratory Judgment.**

While the parties obviously disagree about the viability of Plaintiffs' NVRA claims, the parties clearly agree that Plaintiffs' entitlement to declaratory relief is dependent upon the their NVRA claims' success; Plaintiffs have no independent claim for declaratory or injunctive relief. *Compare* Motion at 16 sec. III-E *with* Response at 20 sec. V.  Because Plaintiffs fail to plead facially plausible NVRA claims for the reasons stated in Administrator Adams's motion and in this reply, Administrator Adams urges that the Court cannot grant Plaintiffs declaratory relief pursuant to the Declaratory Judgment Act, or grant Plaintiffs injunctive relief.

## III.    CONCLUSION

As the Dallas County Elections Administrator, Defendant Paul Adams endeavors to ensure that all who are entitled to vote in Dallas County are afforded that opportunity.  Administrator Adams, however, is not empowered or authorized to change Texas or federal law regarding voter verification processes or control the processes adopted by the Texas Secretary of State.  Having failed to show Article III standing, or that Plaintiffs present a justiciable, non-political grievance, the Court should dismiss Plaintiffs' claims against Administrator Adams.

## IV.    PRAYER

WHEREFORE, Defendant Paul Adams, in his official capacity as Dallas County Elections Department, moves the Court to dismiss all claims against him from Plaintiffs' Complaint, that Administrator Adams be granted his reasonable and necessary attorney fees and costs as provided by 52 U.S.C. § 10310(e), and that the Court grant him all such other and further relief to which he is justly entitled.

Respectfully submitted,

JOHN CREUZOT
DALLAS COUNTY CRIMINAL
DISTRICT ATTORNEY

*/s/ Barbara S. Nicholas*
Assistant District Attorney
Texas State Bar No. 24032785
barbara.nicholas@dallascounty.org

Jason G. Schuette*
Assistant District Attorney
Texas State Bar No. 17827020
jason.schuette@dallas.county.org

Civil Division
Dallas County Records Building
500 Elm Street, Suite 6300
Dallas, Texas 75202
Telephone:    214.653.7358
Telecopier:   214.653.6149

ATTORNEYS FOR THE DEFENDANT
PAUL ADAMS, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY ELECTIONS DEPARTMENT

*Application for admission to be filed

## CERTIFICATE OF SERVICE

I hereby certify that on 24 July 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the undersigned and to all following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Jason G. Schuette*
Assistant District Attorney